# Volmer's Appeal.

1. The General Railroad Act of April 4th, 1868, P. L., 62, in so far as it confers power on a railroad company to construct branches from its main line, is not repealed. The Act of May 21st, 1881, P. L., 27, has no application to the power to construct branches conferred by the former Act.

2. The construction of a branch railroad nearly double the length of the main line, is not of itself an abuse of the branching powers conferred on railroad companies by the Act of April 4th, 1868, P. L., 62. The relative importance of the main line and the branch cannot always be measured by their length respectively.

3. The courts, in the proper and judicious administration of the law, have ample power to restrain abuses of corporate grants.

January 11th, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN and CLARK, JJ., absent.

APPEAL from the Court of Common Pleas, No. 1, of *Philadelphia county:* In equity of January Term, 1886, No. 462.

Appeal of Mathew Vollmer from the decree of said court, dismissing his bill in equity, praying for an injunction to restrain the defendant, the Schuylkill river and East Side Railroad Company from entering upon and constructing a railroad on his property.

The defendant filed an answer and demurrer. The case was heard on bill, answer and demurrer.

The company defendant was incorporated July 14, 1883, to build a road "from a point near the intersection of Twentieth street and Pennsylvania avenue, in the Fifteenth ward of the city of Philadelphia, state of Pennsylvania, to a point in the Twenty-seventh ward, of the said city of Philadelphia, near to the intersection of Fiftieth street and Bartram avenue." The length of the road to be, "as near as may be, three miles." The length of the road as now actually laid out is three and nine-tenths miles.

From a point about the middle of this road the defendant has laid out a road consisting of a double track and turn-outs to a point on the Delaware river. The length of this road is six and six-tenths miles. This road was surveyed through the plaintiff's property.

Plaintiff contended first that the Act of May 21st, 1881, requiring roads of less than fifteen miles in length, wishing to extend their lines, to file new articles of association, etc., applies to this case, and that as the directions there laid down have not been followed, the defendant is acting *ultra vires*, and (secondly) that even if the Act of 1881 does not apply, the general branching powers given by the Act of 1868 do not authorize the construction of a branch of equal importance to and twice the length of the main stem.

The respondent contended (first) that the Act of 1881 does not apply to this case, and (secondly) that under the Act of 1868 the branching powers acquired are limited only by the discretion of the corporation:

After hearing the court, ALLISON, P. J., dismissed the plaintiff's bill, filing the following opinion:

The plaintiff, who is the owner of about seventeen acres of land in the lower portion of the city of Philadelphia, through and upon which the defendants have located and are about to construct their railroad, prays that an injunction may be granted to restrain the construction and operating of said road through or over said tract of land, or through or upon or over or across streets laid out as recited in the bill upon the aforesaid real estate of the plaintiff.

The corporation defendant was, the plaintiff asserts, organ-

ized on the fourteenth day of July, 1883, under the general
Railroad Act of this commonwealth, approved April 4th,
1868, entitled "An Act to authorize the formation and regu-
lation of railroad corporations," and its supplements; that by
its charter it is only authorized to construct and operate a
railroad from a point in the Fifteenth ward of this city to a
point in the Twenty-seventh ward of the city, of a length of
about three miles.

It is made a material part of the plaintiff's case, as set
forth in his bill, that the defendant, without right, and in
violation of law, threatens and is about to extend the line of
said railroad from a point about midway between the two ter-
minal points named in its charter to a terminal point on the
Delaware river, the length of said proposed extension being
about six miles, or nearly twice the length of the road desig-
nated in its charter, which it is authorized to build.

In support of the charge that this extension is without
warrant of law, the plaintiff claims that such extension can
only be made after compliance with the requirements of the
Act of the twenty-first day of May, 1881 (P. L., 27), which is
a supplement to the general railroad law of April 4th, 1868.

The Act of 1881 provides that when a railroad company,
incorporated under the Act of 1868 and its supplements, for
the construction of a railroad not exceeding fifteen miles in
length, shall be desirous of extending its line of railroad, and
shall so determine by a vote of its stockholders, called for
that purpose, that supplemental and amended articles of
incorporation shall be prepared which shall contain the essen-
tial requisities specified in the Act, most of which are set
forth in the bill.

It is alleged by plaintiff, and not denied by the defendants,
that such supplemental articles of incorporation have not
been adopted or filed with the Secretary of the common-
wealth, nor has an acceptance of the provisions of article 16
of the Constitution of the state been filed, as required by the
third section of the Act of 1881.

It is upon the failure of the defendants to qualify them-
selves to extend their road, as required by the Act of 1881,
that the equity of the plaintiff is chiefly grounded.

All that is thus charged is admitted by the defendants,
because, they answer, the Act of 1881 has no application to
the construction of their road to its proposed terminal point
on the Delaware river. That in fact they are not extending
their road from either of the terminal points designated in
their charter, but that they are about to construct a branch
road from their main line. The authority to do this, they
claim, is found in the ninth section of the Act of 1868 (P. L.,

64), which provides that "any company incorporated under this Act shall have authority to construct such branches from its main line as it may deem necessary to increase its business and accommodate the trade and travel of the public."

This Act of 1868 authorizes any nine citizens of the state to form a company for the purpose of constructing, maintaining and operating a railroad for public use ; and upon complying with the provisions of the Act, authority is given to carry into effect the objects named in their articles of association, and to exercise all the rights, powers and privileges, and be subject to all restrictions and liabilities, of the general railroad law of February 19th, 1849, and its supplements.

In the Act of 1868 there is no limitation or restriction placed on the length of the road which any nine or more citizens may propose to construct and operate ; nor is there any limitation placed on the power to construct branch roads. Exercising their right under the first section of the Act, the defendants in their articles of association stated that the length of their railroad would be three miles, "as near as may be," and claiming to exercise a branching power under the ninth section, they propose also to construct the branch in question. It is in the power conferred under the Act of 1868 to build branch roads that the defendants find their justification for what they propose to do in constructing a branch road to the Delaware river, independent of and without reference to the Act of 1881. Can this be lawfully done?

The answer to this question depends on finding what is the interpretation of the Act of 1881, in its application to the case before us, as it is made to appear by the bill and the answer; the latter to be regarded on the motion for a special injunction as an affidavit merely, denying or confessing the statements of the bill; and in this aspect we are to consider the case as it stands before us now; the answer or the affidavit is to be treated as not denying the facts as they are set forth by the plaintiff, but raising the question of the defendant's freedom from or subjection to the requirements of the Act of 1881 in the exercise of their asserted right to build the proposed branch road.

The title of the Act of 1881 shows, so far as the purpose of the Act is therein declared, that it was intended to authorize railroad companies not exceeding fifteen miles in length to extend their lines. It therefore becomes necessary to look into the Act itself, to ascertain on what terms and conditions this power may be exercised; such examination will show that the extension of the lines of the road follows substantially the form and requirements of the formation of the company under the Act of 1868, but makes necessary, in addition to the state-

ment of the amount of capital stock as originally incorporated,· a further statement of the amount of the capital stock of the company under the amended and supplemental articles of association.

We think it is clear that the intention of this Act is to connect with a grant of power to extend the lines of a road, which is of no greater length than fifteen miles, the power to issue additional capital stock and bonds required by the terms of the Act not to be less than $5,000 per mile for every mile of the road to be constructed. The sixth section of the Act of 1868 provided for an increase of capital which should not exceed $60,000 per mile. Section eight of the same Act gives the company power to borrow money not exceeding the amount of the capital stock subscribed. Such companies, therefore, had power to raise by stock and bonds $120,000 per mile, which, by the Act of June 4th, 1883, was increased to $300,000 for each mile.

The extension, · therefore, of the lines of the road, which seems to mean the prolongation of the road from its terminal ·points, and which in the first section of the Act of 1881, is required to be set forth in the supplemental articles of association and is declared to be " the place from and to which the road is to be constructed or maintained and operated."

It is then provided, in the second section, that when the requirements of the Act have been complied with, the Governor shall issue his letters patent, extending the rights and powers of the corporation, in accordance with the terms and provisions of the amended articles of association, with power to use and enjoy all the rights of the corporation under its original articles of association and charter, and as extended by the amended and supplemental articles of association,—" between the limits therein named."

An examination of the Act of 1881 will, we think, fail to disclose any other grant of additional power, except that which is declared in the title and in the first paragraph of the first section of the Act, namely, the extension of the line of the . railroad, which carried with it the important power to issue additional stock and bonds.

This power to extend the lines of the road, and as a consequence to issue additional stock and borrow an increased amount of money, is by the first section of the Act made dependent on a vote of the stockholders, who would seem to have conferred on them the power of unlimited extension of the lines of their road.

This conclusion reached as to the meaning and true interpretation of the Act of 1881, we are carried back to the consideration of the question, what effect has the Act of 1881

upon the power of railroad companies to construct branches of branch roads from their main lines which was given by the ninth section of the Act of 1868?

It is contended that the power to extend lines of railroads, under the Act of 1881, is inconsistent with the exercise of the branching power given by the Act of 1868, and that the ninth section of said Act must be regarded as inoperative and virtually repealed.

It is not pretended that there is a repeal in terms by any portion of the Act of 1881, and a repeal of the said ninth section by implication is not to be favored. It is our duty to maintain the law as we find it on the statute book, if it can be done. Are the two provisions so repugnant, the one to the other, that both cannot be maintained.? We do not so regard them.

There is no repugnance in a grant of power to extend railroad lines coupled with the power to issue stock and bonds, which will enable the corporation to raise an increased amount of money, and the grant of a right to extend a road by the construction of branches without the power to issue additional stock and bonds. Branch roads cannot be constructed without money, but if the corporation is possessed of it, or can obtain it without issuing stock or bonds with which to build it, why should not such power be exercised while at the same time the lines of the road may be extended or prolonged in the manner provided for in the Act of 1881?

We indeed see no reason why an extension of lines of a railroad and a construction of branch roads may not both be done by the same corporation at the same time. The power to extend lines and construct branches, each finding their separate authority and its limitations in the several Acts or parts of Acts of Assembly, conferring power and prescribing conditions, or without limitations or conditions, as the legislature may decide.

The objection which has been urged against this conclusion is, that under the branching power the road may be extended to any length which the company may deem necessary to increase its business and accommodate the trade and travel of the public; that short roads of less than fifteen miles in length, may extend branch roads to any part of the commonwealth.

Without deciding that this is the logical and necessary consequence of a power to build branch roads, the answer to this objection is, that we have nothing to do with the wisdom of incorporating in the fundamental law of the commonwealth a provision which authorizes citizens to take to themselves the powers of a railroad corporation, and enables them

to exercise the sovereign power of eminent domain and appropriate at their pleasure the houses and lands of the citizens of the commonwealth, so far as the same may be necessary, to the construction of railroads; nor have we, in construing these laws, to decide upon the wisdom or the expediency of a legislative grant of authority to make branch roads without restriction as to length or direction. Our duty is to try and ascertain what the law is, and not to say what we think it ought to be or to disregard it, if we should be of the opinion that these laws are to some extent subject to criticism, though not repugnant and in conflict with each other.

The power of railroad companies under an authority to construct branch roads has been upheld by the Supreme Court of this state on several occasions, in which a most liberal construction has been given to the several Acts of Assembly under which the questions have arisen.

In the case of the Mayor, etc., of the City of Pittsburgh *vs.* the Pennsylvania Railroad Company, 12 Wright, 355, it was held that the power of the company defendant to make branch or lateral roads is as large as the power granted for the construction of the main line; such branch roads could be carried, by the terms of the Act of incorporation, into or through either of the counties into or through which the main line of their road should pass.

In the case of the Western Pennsylvania Railroad Company's Appeal, 3 Outerbridge, 155, it was decided that a railroad company is authorized by the ninth section of the Act of April 4th, 1868, to construct a branch line from its terminus as well as from any other point on the line of its road.

In McAboy's Appeal, 11 Outerbridge, 548, the principles maintained in the cases referred to were affirmed. The construction of the proposed branch road was supported by a special grant of branching power given to the Pittsburgh and Connellsville Railroad Company by the Act of April 1st, 1868, as well as by the general branching power conferred by the ninth section of the Act of April 4th, 1868, upon which the defendants in this case rest their justification to construct their proposed branch road.

Mr. Justice GORDON, delivering the opinion of the court, says: This company must be regarded as the *locum tenens* of the state, and the legislature having conferred on it the branching power, it may do just what the Commonwealth could do under like circumstances. The court also affirms the doctrine laid down in each of the cases cited, that the necessity for such branches and their direction rests in the will and discretion of the president and directors by whom they are to be constructed.

[Volmer's Appeal.]

To this is added the statement that the definition of a branch railroad does not depend either on its length or direction. The significant question is asked, if the projection of a completed road for one square is too short for a branch, then what distance will be required to allow the use of this term? The question, the court says, involves in itself its own absurdity.

This line of decision is far-reaching in its results, and when it is placed in line, with the vast power which, by the Constitution and Acts of Assembly, is given to railroad corporations, there seems but little for the citizen whose property is taken for railroad purposes to do but submit, and if needs be to suffer, with what grace he may, this authorized spoliation of his property, for which he seldom or never receives an adequate compensation.

As we understand the law applicable to this case, the defendants have the legal right to locate and construct their branch road, through and over the property of the plaintiff, and this requires that his application must be refused, and it is so ordered.

The application for leave to amend the answer after argument in open court had closed, and indeed after supplemental briefs had been submitted by both sides, is refused.

Such amendments, under the equity rules, are allowed or refused by the court in their discretion. In the present instance, the amendment might result in changing the whole position of the case from that in which it now stands before the court. It introduces new and material averments of fact, which would probably be replied to by plaintiff, and this might involve sending the case first to an Examiner to take testimony and afterward to a Master to find the facts.

We cannot assume that the material averments of the proposed amendment would be accepted by the plaintiff without issue being joined as to one or more of them, and this would send the case back for what might end in a prolonged contest over the new matter which defendants at this stage of the cause desire to introduce into it. Against the objection of the plaintiff we think this amendment ought not to be allowed.

And now March 9th, 1886, demurrer overruled. Judgment for defendant on bill and answer, and bill dismissed.

The plaintiff thereupon took this appeal assigning for error the decree of the court dismissing his bill.

*Rufus E. Shapley* (*Ellis Ames Ballard* with him), for appellant.—Has the railroad company, defendant, which, under its charter, is authorized to build a road only three miles long and between certain terminal points, the power to build an

extension from a point on its main line to a new terminal point, different from either of those specified in its charter, said extension being twice the length of its entire main line, without having complied with any of the provisions of the supplement of May 21st, 1881 ; and has it, therefore, the power to take the plaintiff's property by right of eminent domain ?

Independently of the supplement of 1881, this company has no authority, under the Act of 1868, to build a branch or extension twice the length of the main line which it was incorporated to build.

But, even if, prior to the passage of the supplement of 21st May, 1881, any railroad, however insignificant in length, did have the power to build a branch or extension three times as long as the parent trunk, that power so far as regards all " railroads not exceeding fifteen miles in length," is expressly restricted by the supplement, so that all such railroads are now powerless to make any extension of their " line of railroad " until and unless they shall have complied with each and every requirement of the Act, as amended by the supplement.

*Thomas Hart, Jr.*, for appellee.—That the defendant had authority to build the said railroad as a branch from its main line under the ninth section of the Act of April 4th, 1868.

In Mayor *v.* Pennsylvania.R. R. Co., 12 Wr., 355, Judge READ said, page 359, " These branches or lateral railroads within the space of the counties mentioned, depend upon the discretion of the president and directors, who are made the judges of the convenient places or points to which they are to be led, and also of their advantages, and whether they are suited to promote the convenience of the inhabitants of such counties, and the interests of the company. If these terms are fully complied with, then in making such branches or lateral railroads the company have, or, using the language of the Act, the president and directors have, exactly the same powers and authority as they possess and can exercise in constructing their main line. The branches and the main line in these respects are placed on the same footing."

The whole subject of the building of branches under the ninth section of the Act of 1868 is one committed to the discretion and judgment of the company itself, and with which, at least in a case free from a willful abuse of the power, the courts will not interfere. See Railroad *v.* Young, 9 Casey, 175 ; Railroad *v.* Speer, 6 P. F. S., 332; Parke's Appeal, 14 Id., 137 ; Struthers' Appeal, 6 W. N. C., 161 ; Getz's Appeal, 10 Id., 453 ; McAboy's Appeal, 16 Id., 214 ; Western Pa. R.

R. Co.'s Appeal, 11 Id., 231; Howard County *v.* Boonville Bank, 108 N. S., 314; Mayor *v.* Pa. R. R. Co., 355.

The Act of May 21st, 1881, has absolutely nothing to do with this case, that is, the exercise of the power to branch, given by the ninth section of the Act of 1868, in case of a railroad not exceeding fifteen miles in length, is not now subject, to an observance of the terms of the Act of 1881, providing for the filing of amended articles in case of an extension of the railroad of such company.

A review of the legislation will make this plain :

The Act of April 4th, 1868, P. L., 62, Purdon (ed. 1883), 1414, provided in the sixth section, Purdon, 1415, pl. 6, that the original amount of stock and increased capital should in no case exceed $60,000 per mile.

Section 8 gave the company power to borrow money not exceeding the amount of capital stock subscribed: Purdon, 1416, pl. 8.

The consequence of this legislation was that very short and in many cases exceedingly expensive roads, were so limited in the issue of stock and bonds, to $120,000 a mile, that they could not be built thereupon, or at least that they could not be prolonged without new capital.

This difficulty did not exist, or at any rate did not occur so often in the case of long roads, for in those cases there would very likely be many miles of easy and inexpensive construction, so that the aggregate of the stock and bonds at $120,000 for every mile was sufficient even for a good deal of new road not originally provided for. It was this difficulty that gave rise to the Act of May 21st, 1881, P. L., 87; Purdon, 1428, pl. 70.

The Act of 1881 was not intended to give the power to build an extension, certainly not in all cases.

As to companies incorporated under the Act of 1868, the power was conferred by the ninth section, Purdon, 1416, pl. 9, giving the power to build branches, as the section has been construed in Western Railroad Company's Appeal and McAboy's Appeal, cited before. The only thing required was the ability to get more money by an additional issue of stock and bonds.

It was doubtful whether, when a company afterwards determined to build a branch or an extension under the name of a branch, it could issue more stock and bonds, at the rate of $120,000 per mile, of the length of the new construction.

It was to enable companies to do this that the Act of 1881 was passed.

Its provisions are enabling; they do not have to be complied with, in order to build a branch, or even an extension

under the name of a branch, if the company does not want to issue more stock and bonds.

The Act is confined to roads not exceeding fifteen miles in length.

Why? Because the trouble existed as to them only or mainly. The short mileage of such roads made their capital very small.

Mr. Justice PAXSON delivered the opinion of the court, February 14th, 1887.

This bill was filed in the court below by the plaintiff to restrain the defendant corporation from proceeding to construct its road through his, plaintiff's, land. It appears that the company, defendant, was incorporated in the year 1833, to build a road " from a point near the intersection of Twentieth street and Pennsylvania avenue, in the Fifteenth ward of the city of Philadelphia, to a point in the Twenty-seventh ward of the said city of Philadelphia, near to the intersection of Fiftieth street and Bertram avenue." The length of the road, as provided by its charter, was to be, " as near as may be, three miles." As actually laid out it is three and nine tenths miles. From a point about the middle of this road the defendant company has laid out a branch road to a point on the Delaware river. The length of this branch is six and six tenths miles. It is this branch which goes through the plaintiff's property, and he seeks to restrain its construction upon the ground that it is an extension of the main line, and not a branch, and that it comes directly within the letter and spirit of the Act of 21st of May, 1881, P. L., 27, which authorizes railroad companies whose lines do not exceed fifteen miles in length, to extend their roads upon the terms and in the manner prescribed by said Act; and that inasmuch as the defendant company has not complied with the requirements of the said Act, it is acting *ultra vires* and has no right to take plaintiff's land.

The defendant company does not allege that it has complied with the requirements of the Act of 1881. On the contrary it disclaims acting under said Act, and refers for its authority to the Act of 4th April, 1868, P. L., 62, the 9th section of which provides that " any company incorporated under this Act shall have authority to construct such branches from its main line as it may deem necessary to increase its business and accommodate the trade and travel of the public."

The plaintiff contends that to construct a branch of nearly double the length of the main line is an abuse of the branching power conferred by the Act of 1868, even supposing that Act still in force; that if a branch may be constructed longer than the main line, it may be constructed to any point within

the state, so that a road of three miles in length may have a branch three hundred miles in length.

An argument seldom derives much strength by the statement of extreme propositions. When it comes to an abuse of a corporate grant, the courts, in the proper and judicious administration of the law, have ample power to restrain it. The Act of 1868 fixes no limit to the length of a branch to be constructed under it. That is left to the sound discretion of the company, and in a case free from a willful abuse of the power the courts will not interfere: Railroad Co. v. Speer, 56 Pa. St., 56; Parke's Appeal, 64 Id., 137; Struthers v. Dunkirk, Warren & Pittsburg Railway Co., 6 W. N. C., 161; Getz Appeal, 10 Id., 453; West Penn. Railroad Company's Appeal, 11 Id., 231; McAboy's Appeal, 16 Id., 214; and see Mayor, etc., of Pittsburgh v. Penn. R. R. Co., 48 Pa. St., 359.

We see nothing in the case to indicate an abuse of power by the defendant company. The main line, although less than four miles long, connects the Baltimore and Ohio and the Philadelphia and Reading systems, and thus becomes an important piece of road, over which a large amount of traffic must necessarily pass. The branch road referred to merely runs to the local freight depot on the Delaware at Dickenson street. This depot is about two miles in distance from the main line, yet to avoid the expense and inconvenience of locating it through the built-up portions of the city, a detour is made by which the actual length of the road is about six miles.

It is not necessary that we should discuss the difference between a branch and an extension. That was done in Western Penn. R. R. Co.'s Appeal and McAboy's Appeal, *supra*. We are clear that this is a branch, and that its character as such is in no sense affected by the incident, that to reach its objective point, it makes a detour that increases its length over that of the main line. The relative importance of the main line and the branch are not to be measured by their length respectively, under the peculiar circumstances of the case.

As a branch it clearly comes within the provisions of the ninth section of the Act of 1868. That Act has not been expressly repealed, and we find nothing in the subsequent legislation from which such repeal can be properly implied. Under this view we do not regard a discussion of the provisions of the Act of 1881 as necessary to an intelligent view of the case. That Act has no application.

The people of this state, through their representatives in the legislature, have from time to time conferred vast powers upon corporations, and especially upon railroad corporations. Where this power has been conferred, this court, in a long

5 AMERMAN—12

line of decisions, has sustained the grant, neither more nor less, as it was our duty to do. These grants of power, and this line of decision, have called forth from the learned and able President Judge of the court below the following remarks, which we quote from his opinion: "This line of decision is far reaching in its results, and when it is placed in line with the vast power which, by the Constitution and Acts of Assembly, is given to railroad corporations, there seems but little for the citizen whose property is taken for railroad purposes to do but submit, and if needs be to suffer, with what grace he may, this authorized spoliation of his property, for which he seldom or never receives an adequate compensation."

I can best supplement these remarks by saying that it is idle for the people who confer these immense powers·upon corporations, to expect this court to wrest such powers from them, except when they have been conferred in violation of the organic law. And however much we may doubt the wisdom of such legislation it is not our province to set it aside. It is our duty to sustain vested rights, which the law-making power has conferred. In doing so we are but carrying out the will of the people, lawfully expressed.

The decree is affirmed and the appeal dismissed at the cost of the appellant.